Please approach the bench and introduce yourself to the court. My name is Emily Filkey and I represent M.M. Let's just state attorney in that columns for the people. Okay. And appellant, do you want to reserve some time for the people? Yes, Your Honor. Two minutes, please. Okay. Good morning, Your Honors. This morning I will focus my comments on issues 1 and 4 in the briefs. Invitees are exempted from criminal liability under the aggravated and lawful use of a weapons statute. There is sufficient evidence. Ms. Filkey, let's go to the probable cause issue. You're claiming in your reply brief that there's no probable cause because brandishing a gun on the street is not illegal. Is that correct? Not entirely, Your Honor. That's a portion of the argument that goes to the two. And pretty much it's the same as driving a car. You have a driver's license and more people are killed by driving a car than a gun. Was that taken from the NRA talking points? No, Your Honor. That point was just to get to the tip, that merely having a tip saying, calling 9-1-1, saying there's an individual on the street with a gun. That's not illegal. Just on that, that we don't know. We don't know if they have a permit, a concealed carry permit or not. And so in that case, the statute. So the police have no obligation to investigate that because they don't have a probable cause that they've gotten a tip that somebody is walking around carrying a gun. The statute allows for the police to ask the person if they have a permit. In this case, that didn't happen. Officer Walker never asked MM whether they had a permit. How old is MM? Sixteen. Okay. So the officer sees youth that match the description of the tip they got in the area that they got, that he's brandishing a gun on the street, and the officer doesn't have any authority to stop him and find out what's going on. Is that your position? No. My position is that he has authority to ask under the statute to ask the individual if. So he tells him to stop, and this kid immediately goes into the garage and is clearly hiding something behind a couch. Right? Is that our fact? He's bending over, and Officer Walker testifies it looks like he's hiding something, yes. Okay. What we have to remember, too, is that the tip is inconsistent with the conditions that Officer Walker encounters. It's not 100% consistent. So what should the officer have done? The statute permits him to ask, you know, do you have, if he suspects, like he said, that there's a gun that he's hiding, he has permission under the statute to ask. You keep saying the statute says. I mean, don't we use the word reasonable? I mean, officers are out there to protect the safety of the community, are they not? Yes, they are, Your Honor. And they're supposed to be able to investigate to see whether the safety is being violated in some way? Don't they have that obligation? They do. But in this situation, Your Honor, the tip was that there were two guys walking westbound on Sherwood Avenue, and Officer Walker doesn't see two guys walking westbound on Sherwood Avenue. He sees four guys in a driveway in the easternmost house on Sherwood Avenue. But he does have the clothing to match. You know, he says one of the guys with the gun is wearing all gray with a gray baseball cap backwards, and he sees an individual wearing that clothing. But the tip is not 100% consistent at this point. At any point, actually. The tip is not consistent. And it doesn't have any disability liability. See, you haven't answered my question. My question is, what should the officer have done differently? Well, the officer didn't have. No, no. I mean, just tell me. If you can, what should the officer have done differently than what he did do? Right. Based on what he had, nothing. I mean, nothing differently. But he shouldn't have done anything. Is that that thing? Nothing at all? He shouldn't investigate it? Somebody says that somebody's got a gun and you don't investigate to see if that's true? He sees an individual that matches the description, but he's on private property at the point when he sees him. So your position is as soon as he steps off the sidewalk, onto a driveway, that's it. You need a warrant. Is that your position today? And if it is your position, I'd like to know what case or what statute gives you that authority. Right. No, that's not my position today. Well, you're saying that the driveway is private property, and so the officer would need something more to approach them as soon as they're on that driveway. I'm saying that the driveway's private property, but he needs, he could just ask him. If he wants to investigate the tip, he could just ask him. Okay, so he did ask him. He said, come on over here. Come over to the curb. And the kid responds by going into the garage behind a couch and hides a gun there. So exactly what was the officer supposed to do at that point? He can ask him if he has a license to carry a gun. I mean, the kid has a right. He doesn't even know if he has a gun at that point. Right, but Emem has a right to not follow the officer's directive. He has a right to go about his business. Okay, so the officer has a report that somebody matching the clothing description on the same street is brandishing a gun on the street. When he sees the kid matching that, he asks him to come over. And at that point, the kid responds by going into the garage. So I'm not really sure. I think Justice Gordon asked you this three times. I'm going to ask you now. What was the officer supposed to do? Just walk away and say, oh, well. I'm not sure what you're asking for here, Ms. Pilkey. Just arguing that the officer did not have probable cause of reasonable suspicion at that point. Based on the tip, has no predictive. And what case ever said that in any state in the United States? I don't care what state. Tell me one. Well, in Florida versus J.L., they have the tip. And, you know, What were the facts of that case? There's a tip that an individual is, it's just based on the clothing, similar to here. It's just based on the clothing. That an individual. That case wasn't a minor?  No, it wasn't, Your Honor. It had nothing to do with a minor. It had nothing to do with somebody saying that somebody ranishing a gun. Actually, Your Honor, I'm sorry. It was about a minor. It was a young black male standing at a particular bus stop wearing a plaid shirt and carrying a gun. So in that sense, the tip was similar. Although it was an anonymous tip and this was a 911 tip. That case was carrying a gun, not displaying the gun. This, in here, the tip wasn't clear. It wasn't clear if the person was displaying a gun. Officer Walker just said that he was responding to a call of an individual with a gun. So we don't know if it's ranishing or if the person that called the tip in there maybe just saw it or saw the outline. We just don't know. Let's get to the garage. What evidence do we have that the respondent is an invitee under the exception of the statute? So MM is on the driveway with three of his acquaintances and the evidence was that one of the acquaintances lived in the house. So the four of them are clearly on the land. But which one? Because they were never identified at trial, were they? No, they weren't. They were never specified. But Officer Walker did say that one of the individuals did live at that house. But in order to be an invitee, he needs to have permission. Correct. So who was it that gave him the permission? Well, the statute doesn't require a name, just that the individual that lives there. Well, you have to identify someone that said, I'm giving you permission to be on my property with a weapon to fall under the exception of the statute. So what evidence was presented to the trial court to indicate, I gave respondent permission to be on my property? Well, again, the state's evidence was that one of these kids lived in this house. No, I know that. But which one of these kids gave him permission to be on the property with a weapon? Right. And the statute doesn't require that the permission be explicit. I mean, there's no requirement that the permission be explicit. No, there has to be permission. Right. Otherwise, he's a trespasser then, right? If he's not invited? Correct. Correct. Okay. The state's evidence was, though, that M.M. had visibly had the gun. I don't think anybody's disputing that. Right. Right. But if he visibly had the gun, then his acquaintances would have been aware of the gun and the gun's presence on M.M. when he went onto the property. Well, what if he was holding the gun against them? So we still need permission. And that's what I didn't see in the record. Where was the permission that allowed him to be an invitee on the property with the weapon? I mean, it's implicit permission. There's no suggestion that the acquaintance was trying to get M.M. off the property or – Does the statute allow for implicit permission? The statute doesn't say one way or the other. So he really is a trespasser. I mean, it's customary for kids to invite their friends onto the property. That doesn't make their friends that come over – But wouldn't there need to be some evidence of that in order to qualify for that exemption? By the preponderance of the evidence. It doesn't have to be evidence beyond a reasonable doubt. So where's the evidence? So what evidence do we have? We have – Sorry, we're double-teaming you. No, no. That was my original question. What evidence do we have to show that he falls under the exception of this? We have the evidence that he had the visible gun and that he was with his acquaintances. And his acquaintances, you know, one of them lived there and wasn't trying to get him off the property. That's the evidence that we have. And we're arguing that – Would you try to get somebody off your property if they had a gun and you didn't have one? Yeah. You would? If they had a gun and I didn't have one? Yeah. Yeah, I would want to kick them off my property. Okay. If I – yes. So do we have any evidence that that happened here? No. There's no evidence that anyone was trying to get rid of M.M. or kick him off the property. So we either have a trespasser or what? There's no evidence that he's a trespasser. There's no evidence he's an invitee either. He's there with these three other kids in the driveway. But we still don't have the permission. That's the problem here. In the trial court, there was never any evidence established that he had permission to be an invitee on the property with a weapon. Your Honor, the evidence, in my opinion, is sufficient to establish by preponderance of the evidence that, you know, he's in the driveway, so he's on the land, he's there with some kids. Is this a preponderance of the evidence case or a case of guilty beyond a reasonable doubt? To prove the exception,  Because the evidence established that he was an invitee by preponderance of the evidence, on his acquaintance's land, he's exempted from criminal liability under the aggravated unlawful use of a weapon statute. Alternatively, the juvenile court's imposition of the no-gang contact order was unreasonably overbroad and not narrowly tailored. Did anybody ever bring that order back to the trial court and ask for a modification? No. No, Your Honor, they did not. Wouldn't that have been simpler? Pardon? Wouldn't that have been simpler? It would have been simpler, I guess, in the sense that it was already there, but now we have the case on appeal, you know, and this court has jurisdiction over this because the Illinois Supreme Court rules say that probation orders are final and appealable orders. And addressing this here is also the most efficient remedy for my client at this point. And the legislature has indicated that expediency is important in juvenile cases. So if expediency is important, wouldn't it be faster, quicker, more expedient to bring it right back to the trial court, say there's several cases that say this is a little bit overbroad, and ask them to tailor it? You know, this issue is raised under plain error because it wasn't raised in the trial court. It wasn't raised before there. And so this court can address it under the second prong. I understand we can. Right. But if expediency is very important in juvenile, and granted, he could very easily violate that no-contact-with-gains order. Is that not correct? It's absolutely correct. So wouldn't it be in his best interest to get it back in front of the trial court immediately and have that modified? Absolutely. And that's why I'm asking your honors to strike the condition so it can go back there. He could have gone to his probation officer and had his probation officer do that. There are multiple ways to get at this. Okay. Why don't you reserve some time before we move on? Okay. For these reasons, this court should vacate M.M.'s conviction and alternatively strike the new gain provision. Thank you. Good morning. Again, Assistant State's Attorney Annette Collins on behalf of the people. I'll address these issues in turn. As to the exemption issue in invitee on the land, there's an absence of evidence. This was a stipulated bench trial. It just says that there was a preponderance of the evidence. There's no evidence. There's an absence of the evidence. If you listen to the entire argument, it sounds as if M.M. wants us to negate that he somehow approved that he wasn't an invitee. And that's not how the Supreme Court ---- Who's the burden then to prove this? M.M. Okay. By a preponderance. And the way that M.M. would do it is fairly easy. Call the person who invited him onto the property and have that person testify, I invited M.M., I live at that address, I have authority to invite people, and I gave him permission to have a firearm on the property. What if you're not able to find these people, but by the inference you could say, since I'm hanging out with my acquaintances at this property, that should be sufficient to establish the fact that I have permission to have a weapon? Well, I don't even think we have that here because we don't even know ---- we don't know who these people are. We don't know if Respondent even knows this unknown person who lives there. We have only the officer's stipulated testimony to establish that he was there for moments, not for a very lengthy time. We don't know how long Respondent was on that driveway. We also don't know if Respondent was on that driveway with somebody who knew the owner rather than Respondent knowing the owner or the residence. And the one thing, even if we can reasonably infer that he was invited onto the property because he was there, we certainly, certainly can't draw the conclusion that he had authority to possess a firearm. Now, that inference that Respondent wants to draw is absolutely unreasonable because, remember, Respondent's conduct in this case, which I will get to in a moment in the context of the Fourth Amendment, was that he was hiding the gun under a couch when the officer came out. Now, if his gun ownership was legal and authorized and he had permission by the owner to be on that private property, he wouldn't be hiding it. So this is not a case where the exemption is even remotely proven. And, frankly, if a Respondent or any litigant wants to prove this exemption, they can take a stand and talk about how they were invited and how they were invited with permission. Nothing in this record supports those inferences. This is an absence of proof. We are not required to negate, certainly, an absence of proof. And so the exemption was never proven. And by that same token, there is no Fourth Amendment violation in this case. The officer did everything reasonably in this case. The officer didn't just act on a tip of a man with a gun walking down the street. In fact, if we take a look at the Juvenile Court's remarks below, the Juvenile Court even admitted that, hey, maybe if the officer had, when he first saw a Respondent matching the description, had somehow seized him or arrested him, maybe that would have been improper because the tip alone wouldn't have established grounds for seizure. Well, what about this issue that the 911 call is basically like an anonymous tip? Well, I think even counsel has to concede that a 911 call is different than an anonymous tip. There's an additional indicia of reliability with respect to a 911 call because they're all traced, and every citizen knows that they're traced. So to that extent, it's not exactly the equivalent of an anonymous tip. But in this case, that's almost an academic inquiry because the officer didn't seize anybody based just on a tip. Now, there was some talk earlier about how the officer shouldn't have investigated the way he did. The Fourth Amendment deals with seizures. It says nothing about investigations. The officer can investigate any way he sees fit, so long as he doesn't unlawfully seize somebody. And what the officer did in this case was good policing, a societal good. Ms. Cowles, you agree that once the officer pulled his gun on him that there was a seizure at that point? I do. And I want to add one more point to that because I think there was some, a little bit of a factual dispute between myself and counsel about did the officer pull the gun before or after the furtive movements. And I think the testimony is a little unclear, but I'll admit, let's assume for a minute that the officer pulled the gun before the furtive movements. That's actually not significant for purposes of a terror analysis, but it is significant for compliance purposes because if the officer is pulling his gun and respondent is not complying, but continuing to make furtive movements behind the couch, that's not a seizure yet. Now, we're talking about Well, who would feel free to leave at that point? Nobody. Well, he's continuing to do something that the officer has ordered him not to do because along with the show of force, the officer says, get out from behind the couch or I'll shoot. And respondent didn't even comply at that point. But again, it is a matter of moments. So that portion of the interaction where the officer pulls his gun, orders respondent out of the garage, and then respondent comes out and gets handcuffed, that's a seizure. No question. But that's a seizure that is supported, if not by probable cause at that point, because the officer has a great deal of information. At the very least, it's supported by reasonable, articulable suspicion under Terry. And Terry tells us that a show of force with a gun and handcuffing doesn't turn a seizure under Terry into an arrest. It's not the show of force that's relevant to make the distinction between a Terry seizure and arrest. It's the length of time. And when we take a look at the facts here, the length of time was negligible. The officer immediately, after handcuffing respondent, patted him down, assured himself that there wasn't a gun on respondent, and went and found the gun in the couch. And it wasn't that difficult because the gun was in plain view right under the couch. Now, that brings another point, too, that I think bears noting, that even if this officer's behavior was somehow improper under the Fourth Amendment with respect to that seizure of respondent, his recovery of the gun is independent. Respondent is supposed to prove, if he has a privacy interest, he's supposed to prove that the area is searched, he has a privacy interest in it. And he never did that in this case. So ultimately, the seizure of the gun was completely independent of the seizure of respondent. And if respondent's seizure was illegal, it doesn't cause the gun recovery to be illegal. The gun is just not proved. And frankly, neither is the respondent's statement to police at the station. Because remember, respondent, after he was seized, the officer recovered the gun, and that established inviolate probable cause, which then, of course, makes the statement properly admitted. So what that leaves us with is this last issue. And I realize that the arguments that I've been making to this Court with respect to the constitutionality of this no gang association, no gang contact condition has been rejected. But I want to take one very short opportunity to ask this Court to reconsider that again. And the reason I do this is because a challenge to a probation condition is, at its core, an as-applied challenge. That probation condition doesn't apply to anyone else but respondent. So respondent carries the burden to overcome the presumption of constitutionality by showing how that condition actually applies unconstitutionally to him. And he's never done that. In fact, none of the respondents in these cases has ever done that. It's based on hypotheticals alone. Yeah, but the hypotheticals, it's very clear. No contact with gangs. And somebody who lives, goes to school, has family members that are gang members, you're going to violate that condition. You know what? I can actually agree with you, Your Honor, and still say I don't know. I don't know. Well, we don't know from this record if M.M. has any family members who are gang members. Yes, we do. No, we don't. His brother. No, that was in OMRF. Oh, I'm sorry. I'm confusing. No, but M.M. here, M.M. lives at home with his parents, his mom and his stepdad. His stepdad's a barber. He has two young siblings, 7 and 8 years old. None of them are gang members. Respondent doesn't work, so there's not a chance in this case that somebody goes to school, so no contact with gang members. You're sitting at a lunch table with somebody. That's contact. I think that's based on a hypothetical presumption that there's somebody in his school who's a gang member. Now, I don't think we can make that presumption. I think we can make that presumption. Well, I don't think we can. There's a plethora of case law now against you on this one, so we don't need to go down this rabbit hole. Can I just ask one? You need to. I understand. You need to. I'm so sorry. You've given us this argument. J.W. I haven't said this before. One more thing. J.W. I want this Court to take one more look at it. J.W. was that banishment case. There was no hypotheticals used in that case. The 12-year-old lived in Elgin and was barred from entering Elgin. That was the unconstitutional application. We don't have any information here to show us what the unconstitutional application is. We're sending this to the juvenile court to carve out some as-yet-unknown exception. Yeah, but you're forgetting that there's constitutionality that goes on its face, and then there's constitutionality as applied. So you're going into different things, and you're only talking about one of those things. This is as applied. This is as applied. You're saying you're going down the wrong road. Okay. I'm going to conclude by suggesting that there's one way that this Court can avoid a constitutional question. If there's any concern about the ambiguity of this, you can remand. Because this is truly not the place. Remand is the probation issue. You can remand, but not because it's unconstitutional, but because maybe, and again, I'm assuming this isn't just an academic inquiry, that this minor actually needs some direction. He's truly confused as to what he's supposed to do. There's a number of cases. You put the word illegal gang activity, and it's fine. I think that KM, a decision from this Court, suggested that no gang association itself is fine. It's the contact that was the problem. I think by putting illegal in front of it, it unnecessarily restricts the protection of the minor, because the minor could potentially be associating with a gang member, not doing anything illegal, and still get shot. And that's primarily the juvenile court's concerns in these cases. We've spoken to juvenile judges. We've spoken to our juvenile ASAs. We are not adverse to remand. We just want the proper procedures to be followed, and we want the proper constitutional analysis to be set forth so this Court can offer appropriate guidance for future cases. For these reasons and those in our briefs, thank you. Thank you. Good luck. Your Honors, I just want to point out that, again, J.W., Illinois Supreme Court case, there was no evidentiary hearing. In fact, the probation condition in J.W. is similar to the one that we have here in the sense that it was an extremely broad ban that infringes on constitutionally protected liberties. And here also, we don't need an evidentiary hearing because we know the details. We know that M.M. has mandatory school ordered as part of his conditions, and that he has mandatory drug treatment, and we know that he has two friends that have gang associations, so there are gang members around. And he lives in Markham, which is an area with gangs, and he goes to school at Tinley Park High School, which is two towns over. And we know that there are gang members throughout Chicago. Do we have a problem with possibly remanding this down to the trial court to define this order a little bit better? I think that the proper way to do this is just to strike the condition so that the lower courts understand that they need to narrowly tailor these conditions. They can't just tick this preprinted box that says no gang contact because it's just too broad. Like the complete ban on living in South Elgin was held to be in J.W. It's similar because it's just too broad. There's no narrow tailoring. And that's why I think the court should just strike it so that they know they need to actually look at it instead of just tick it. In this case, too, which is different from some of the other appellate court cases, the juvenile court never said anything about this condition in open court. Never said anything about it. Didn't explain it. There's nothing. It's just what's on this form. For these reasons, again, we ask that this court vacate M.M.'s aggravated and unlawful use of a weapon conviction and strike the no gang contact provision. Thank you. Thank you, guys, for a very interesting case. And we'll take it under advisement and the court is adjourned.